Below is an Opinion of the Court.

/s/ Elizabeth L. Perris
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE: | Bankruptcy Case No. 11-30902-elp7 |
| JACK HENRY HECKMAN, | |
|                 Debtor. | |
| SCOTT WALLER, | Adversary Proceeding No. 11-3161-elp |
|                 Plaintiff | |
|        v. | |
| JACK HENRY HECKMAN, | MEMORANDUM OPINION |
|                 Defendant. | |

Prior to filing chapter 7[1] bankruptcy, debtor rented a house from plaintiff. After debtor moved out of the rented premises, plaintiff incurred substantial costs in repairing the property. Plaintiff sued debtor in state court for the damages and obtained a judgment against him. Plaintiff filed this adversary proceeding seeking to have debtor's judgment debt to him excepted from discharge under section 523(a)(6). That section excepts from discharge a debt for "willful and malicious

---

[1] Unless otherwise indicated, all statutory references are to Title 11 of the United States Code.

MEMORANDUM OPINION - 1

injury by the debtor to another entity or to the property of another entity."

After considering the conflicting testimony of the parties, I conclude that some, but not all, of the damages claimed by plaintiff are the product of a "willful and malicious injury" under section 523(a)(6). As a result, $2,460 of debtor's debt to plaintiff is nondischargeable.

I. FACTS[2]

Prior to renting the property to debtor, plaintiff renovated it by installing new carpets, drywall, doors, and moldings. As a result, plaintiff adopted a strict "no pets" policy. The rental agreement between plaintiff and debtor so provided.

Debtor lived in the rented premises with his wife and seven-year-old son from February 16, 2006 (Exh. 22), until sometime in February 2009, when debtor turned over possession of the property to plaintiff. Contrary to the lease terms, debtor and his family had a labrador retriever and cat. Plaintiff insisted that debtor move out of the property after multiple failures to timely pay rent.

Plaintiff regained possession of the property the day after debtor moved out. On February 28, 2009, plaintiff walked through the house with debtor. At the time of that inspection, both plaintiff and debtor observed damage to the property, although their testimony differed as to the extent and cause of the damage. Debtor initially agreed to repair the damage but never returned to the property to complete the repairs.

---

[2] To the extent the testimony relating to certain facts was conflicting, the facts set out in this opinion reflect my determination of the credibility of the witnesses.

MEMORANDUM OPINION - 2

Plaintiff hired Rental Housing Maintenance Services, Inc. ("RHMS"), a rental repair company, to assess the damage to the property and make repairs. Exh. 2. RHMS subcontracted with another company to assess the damage to the carpets and either clean or replace them. Exh. 1. After RHMS completed the repairs, plaintiff paid RHMS and the subcontractor and sued debtor in state court, obtaining a default judgment against him for the repair costs.

## II. LEGAL STANDARD

Section 523(a)(6) excepts from discharge a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." Determining whether a debt falls within the ambit of section 523(a)(6) requires a two step analysis. First, "both wilfulness and maliciousness must be proven to block discharge under section 523(a)(6)." Lockerby v. Sierra, 535 F.3d 1038, 1041 (9th Cir. 2002). Second, "tortious conduct is a required element for a finding of nondischargeability." Id. at 1040-41 (citing Petralia v. Jercich (In re Jercich), 328 F.3d 1202, 1205 (9th Cir.2001)).

An injury is "willful" when "the debtor has a subjective motive to inflict injury or when the debtor believes that the injury is substantially certain to result from his own conduct." In re Ormsby, 591 F.3d 1199, 1206 (9th Cir. 2010)(citing Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002)).

> A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. Malice may be inferred based on the nature of the wrongful act. To infer malice, however, it must first be established that the [conduct] was willful.

MEMORANDUM OPINION - 3

Id.(internal citations omitted).

In addition to willfulness and maliciousness, plaintiff must also show that the injury was caused by intentionally tortious conduct. Lockerby, 535 F.3d at 1041 (citing Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998)). Under applicable state law, waste of the type alleged by plaintiff may give rise to intentional tort liability.

> "Waste" occurs when a person in possession of the land, by act or omission, causes the property's value to decrease as the result of abuse or destruction, thereby causing injury to the property and the holders of legal interests in it.

Whistler v. Hyder, 129 Or. App. 344 (1994). "A landlord's claim against a tenant for waste sounds in tort." Jones v. Bierek, 88 Or. App. 11, 14 (1987). Under ORS 105.805, a court may award heightened damages to the extent the debtor committed waste with "malice."

Under state law, a malicious injury is "a wrongful act done intentionally, without just cause or excuse." McElwain v. Georgia-Pacific Corp., 245 Or. 247, 249 (1966). Therefore, waste committed with malice, as defined by Oregon law, is an intentional tort and meets the intentional tort requirement to qualify for exception from discharge under section 523(a)(6).

### III. DISCUSSION

#### A. Credibility of Witnesses

The parties' testimony conflicted significantly. In closing argument, the parties agreed that the extent to which the debt is nondischargeable primarily rests on questions of credibility. As discussed in greater detail in the analysis of the damage claims below, I have concluded that neither party was entirely forthright in his

MEMORANDUM OPINION - 4

testimony, and that each of them is more believable than the other with respect to certain damage claims.

B. <u>Scope of the Damages that Are Willful and Malicious Injuries</u>

Plaintiff provided insufficient evidence to show that all of the damage to the property rose to the level of willful and malicious injury to the property under section 523(a)(6). However, I find debtor's argument that all the damage done to the property was either mere wear and tear, done without willful or malicious intent, or not done by him unpersuasive. The nature and quantity of the damage to the property, coupled with the parties' acrimonious interactions, convinces me that some of the damages were willful and malicious. Therefore, I examine each claim of damage individually.

    a. <u>Internal Doors</u>

According to the RHMS invoice, three bathroom doors, one upstairs bedroom door, and one main floor bedroom door were damaged. Plaintiff introduced into evidence photos of three doors with visible damage. Exhs. 5, 6, 9. Plaintiff testified that one door was opened so hard it put a hole in the drywall behind it. Plaintiff also provided photographic evidence that a doorknob was broken out of a door casing. Exh. 9. Debtor testified that his son broke one door in a fit of rage and the damage to two other doors occurred as a result of the doors making contact with each other. He denied knowledge of damage to any other doors in the internal part of the house.

I find plaintiff's testimony more credible with respect to the damage to the doors, because it is reinforced by the RHMS invoice and the photos showing a significant amount of force applied to the doors. Based

MEMORANDUM OPINION - 5

on the pervasiveness of damage to the internal doors and the extreme condition of the doors photographed, I find that debtor caused the damage to the doors with "a subjective motive to inflict the injury." I am unpersuaded that the damage was a mere accident or caused entirely by the minor child.

When willfulness has been established, "malice may be inferred based on the nature of the wrongful act." Ormsby, 591 F.3d at 1206. Based on the pervasiveness and severity of damage to the doors and defendant's lack of an alternate explanation, plaintiff has established malice.

Under Oregon law, this type of damage gives rise to liability for intentional waste, meeting the intentional tort requirement for exception to discharge under section 523(a)(6). Malicious waste requires that the damage to the property was intentional and that debtor lacked "just cause or excuse." For the same reasons and based on the same evidence proving that the injury was willful, the injury was also intentional under state law. Furthermore, debtor lacked just cause or excuse. Debtor's explanation of the damage lacked credibility and, therefore, provided no "just cause or excuse." Because the evidence shows intentional damage to the property without just cause or excuse, the injury was malicious waste, an intentional tort under Oregon law, which is excepted from discharge under section 523(a)(6).

According to the RHMS invoice, the cost of replacement and repair of door jams, casings, and doors was $1,400. Exh 2. Therefore, $1,400 of the debt owed to plaintiff for damage to the doors is excepted from discharge under section 523(a)(6).

   b.   Sheetrock and Drywall

MEMORANDUM OPINION - 6

Plaintiff introduced evidence of extensive damage to the sheetrock and drywall. Plaintiff testified that the bathroom door handle went through drywall behind the door, resulting in a hole in the bedroom wall. He corroborated his testimony with a photo of a hole in the drywall. Exh. 8. Plaintiff testified to a corresponding hole in the hallway that was not photographed.

Because the damage to the drywall appears to be an extension of the same injury done to the internal doors of the home, the same finding of nondischargeability applies. According to the RHMS invoice, the total cost to repair the damage to sheetrock and drywall and to paint the repaired areas in the home was $1,060. Exh. 2. Therefore, $1,060 is excepted from discharge under section 523(a)(6).

    c.   <u>Shower Door</u>

Plaintiff testified that the shower door was kicked in by debtor.[3] According to the RHMS invoice, the shower was missing a door and hardware. Exh. 2. Debtor testified that the shower door broke when his son fell in the shower and grabbed the door handle.

Although plaintiff testified that the shower door was kicked in, he admitted he was not on the premises when any of the damage occurred. He also did not provide any further explanation as to why he believed the shower door had been kicked rather breaking in the accident described by debtor. The burden is on the plaintiff to demonstrate that the damage done to the property was willful and malicious. Although plaintiff did demonstrate that the shower door was damaged while the property was in

---

[3] Exhibit 7 shows a picture of the shower, but damage is not observable in the photo.

MEMORANDUM OPINION - 7

debtor's possession, he failed to present sufficient evidence supporting his allegation that the damage was the result of willful and malicious injury by debtor.

    d.    Back Door

Plaintiff testified that the rear door had been kicked 1.5 inches out of the door jam. It was unclear whether plaintiff was referring to a storm door or main rear door. Exhibit 12 is a picture of a storm door that may not be hanging squarely in the door jam. However, the RHMS invoice only reflects pet damage to the storm door requiring repair and repainting. This damage appears to be separate from the damages described by plaintiff.

The damage reported in the RHMS invoice does not reflect the same type of damage described by plaintiff and does not rise to the level of willful and malicious injury. The court lacks sufficient evidence about the back door to make a determination of nondischargeability under section 523(a)(6).

    e.    Carpets

Plaintiff credibly testified to pervasive damage to the carpets throughout the property due to pet urine. He argued that the cat urine damage was so pervasive that it rose to the level of willful and malicious injury.

Although debtor's possession of the pets and failure to repair any property damage caused by pets constitutes a breach of the lease agreement, that does not make it willful and malicious conduct. Plaintiff offered no evidence that debtor intentionally allowed his pets to urinate in the house. Breach of contractual provisions in a lease

MEMORANDUM OPINION - 8

agreement is not an intentional tort. Therefore, the resulting damage is not the type of debt that falls within the ambit of section 523(a)(6).

   f. <u>Windows</u>

Plaintiff testified to two damaged windows in the home. One window had a crack in the upper left corner. Exh. 11. The other window had a small crack in the upper right corner. Exh. 14. Plaintiff observed the damage but did not testify about how the cracks were made. Debtor testified that windows were cracked when debris was thrown from the roof during a roof repair.

Based on plaintiff's failure to offer any proof of facts suggesting willful or malicious damage to the windows or to rebut debtor's testimony that the damage occurred during a roof repair, I find debtor's testimony more credible. The damage to the windows was not the result of willful and malicious injury by debtor and is not excepted from discharge under section 523(a)(6).

   g. <u>Court Fees</u>

Plaintiff argued in his opening statement that he incurred significant court fees and that these should be included in the amount of debt excepted from discharge. However, plaintiff did not testify to or present other evidence of the amount of court fees paid. Therefore, I do not have sufficient evidence to make a determination of exception from discharge under section 523(a)(6).

   h. <u>Other Damages</u>

Because the only evidence in the record of the actual cost to plaintiff to repair the damaged property are the invoices provided by RHMS (Exh. 2) and the carpet subcontractor (Exh. 1), I use these as the

MEMORANDUM OPINION - 9

starting point to determine the amount of debtor's nondischargeable debt to plaintiff.[4]  I cannot consider plaintiff's additional credible claims of damage to the dishwasher, broken tiles inside the front door, damaged window shades, a broken downspout, a missing American flag, and a broken hall closet door, because plaintiff did not present evidence as to the cost to repair these items or other ways to quantify the damages.

## IV. CONCLUSION

For the reasons stated above, I find that $1,400 of damage to the internal doors and $1,060 of damage to the drywall, a total of $2,460, is nondischargeable under section 523(a)(6).  The balance of plaintiff's claim is discharged.

---

[4] Although plaintiff alleged he had additional receipts documenting further costs he incurred repairing the property, he failed to introduce these or other evidence as to the actual cost of repair into the record.

MEMORANDUM OPINION - 10